Calvin Ray Perkins v. State of Texas















IN THE
TENTH COURT OF APPEALS
 

No. 10-95-165-CR

Â Â Â Â Â CALVIN RAY PERKINS,
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellant
Â Â Â Â Â v.

Â Â Â Â Â THE STATE OF TEXAS,
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellee
 

From the 203rd District Court
Dallas County, Texas
Trial Court # F94-52962-P
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
O P I N I O N
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
Â Â Â 
Â Â Â Â Â Â Appellant appeals from his conviction for driving while intoxicated, third offense, for
which he was sentenced to five years in the Texas Department of Criminal Justice, Institutional
Division, probated, and a $500.00 fine.
Â Â Â Â Â Â Appellant appeals on two points of error:
Â Â Â Â Â Â Point 1:Â "The evidence is legally insufficient to support the conviction for DWI."
Â Â Â Â Â Â Point 2:Â "The evidence is factually insufficient to support the conviction for DWI."
Â Â Â Â Â Â This court issued an opinion filed February 26, 1997, overruled Appellant's Point 1;
sustained Appellant's Point 2; reversed the judgment; and remanded the cause for a new trial.
Â Â Â Â Â Â The Court of Criminal Appeals granted a petition for discretionary review, vacated the
judgment of this court, and remanded the case to this court to "re-evaluate appellants point of
error [2] in the light of Cain."
Cain v. State, 958 S.W.2d 404, 407-08 (Tex. Crim. App. 1997) states:
We delineated the proper standard of review for the courts of appeals to apply in
reviewing factual sufficiency grounds in Clewis v. State, 922 S.W.2d 126 (Tex. Crim.
App. 1996). In reviewing factual sufficiency of the elements of the offense, the court
of appeals "views all the evidence without the prism of 'in the light most favorable to
the prosecution' and sets aside the verdict only if it is so contrary to the overwhelming
weight of the evidence as to be clearly wrong and unjust." Clewis at 129. In Clewis
this court discussed three major principles to guide courts of appeals when conducting
a factual sufficiency review.
Â 
First, is the principle of deference to jury findings. . . . In Clewis, we explained that
appellate courts should only exercise their fact jurisdiction to prevent a manifestly
unjust result; those courts are not free to re-weigh the evidence and set aside a jury
verdict merely because the judges feel that a different result is more reasonable. 
Clewis at 135. . . . A court of appeals may not reverse a jury's decision simply
because it disagrees with the result; the appellate court must defer to jury findings and
may find the evidence factually insufficient only where necessary to prevent manifest
injustice.
Â 
Second, courts of appeals must support a finding of factual insufficiency by providing
a detailed explanation of that finding so that this court can ensure that the appellate
court accorded the proper deference to the jury finding. Clewis at 135. . . . We
explained that where a court of appeals reverses a lower court decision on factual
sufficiency grounds, it should detail the evidence relevant to the issue in consideration
and clearly state why the juryâs finding is factually insufficient . . . as to be manifestly
unjust; why it shocks the conscience; or clearly demonstrates bias. Further those
courts, in their opinions, should state in what regard the contrary evidence outweighs
the evidence in support of the verdict. Clewis at 135.
Â 
Third, the standard of review for factual insufficiency states that courts of appeals
must review all the evidence. This differs from a legal sufficiency review where the
court of appeals considers only the evidence that supports the verdict. The court of
appeals must consider the evidence as a whole, not viewing it in the light most
favorable to either party.

Â Â Â Â Â Â Clewis further states: In consideration of a factual sufficiency review, an appellate court
reviews the factfinderâs weighing of the evidence and is authorized to disagree with the
factfinderâs determination. This review, however, must be appropriately deferential so as to
avoid an appellate court substituting its judgment for that of the jury. Clewis v. State, 922
S.W.2d 126, 133 (Tex. Crim. App. 1996).
Â Â Â Â Â Â The court of appeals avoids substituting its judgment for that of the factfinder by
remanding the cause for a new trial. Id. at 133-134.
Â Â Â Â Â Â About 11:00 p.m. on April 2, 1994, Dallas Firefighter Farrell investigated a parked car in
the middle of the road on Military Parkway. Farrell testified that appellant was slumped over
the steering wheel and passed out; that he smelled of alcohol; noticed beer cans in the back
seat; and that he summoned the police.
Â Â Â Â Â Â Officer Johnson arrived at the scene about 11:15 p.m. Johnson testified he believed
Appellant to be intoxicated; had alcohol on his breath; had slurred speech and an unsteady
stance. Johnson arrested Appellant and transported him to the Lew Sterrett Justice Center
where Appellant refused to submit to blood and breath tests, but was videotaped within forty
minutes after his arrest. The video tape is in evidence.
Â Â Â Â Â Â Appellant denied that he was intoxicated; he testified he had spent the day at a recreation
center producing a talent show for children; that he left the center at 9:00 p.m. with a friend,
Emil Thompson, and went to a car wash where he washed his car and drank one beer; that he
left the car wash to go to a friendâs house and had stopped his car to look at his Mapsco and
was leaning forward when Farrell opened his car door and asked him if he had been drinking. 
He further testified that Officer Johnson arrived and asked him if he had been drinking and if
he had any warrants; that he replied he had one beer and did have a probation violation warrant
for DWI.
Â Â Â Â Â Â Emil Thompson testified he was with Appellant until 9:45 p.m.; that Appellant drank one
can of beer at the car wash; that Appellant was not intoxicated; that Appellant took some
medication during the evening; that he noticed Appellantâs nose was running but he was not
âwoozy.â Additional evidence will be recited in our discussion of Appellantâs points.
Â Â Â Â Â Â Trial was before the judge without a jury. The judge found Appellant guilty and sentenced
him to five years in prison, probated, and a $500 fine.
Â Â Â Â Â Â Point 2: âThe evidence is factually insufficient to support the conviction for driving while
intoxicated.â
Â Â Â Â Â Â For conducting a review of the factual sufficiency of the evidence, we recognize that the
State bears the burden of proof beyond a reasonable doubt and apply the âcomplete and
correctâ standard of review set out by the Court of Criminal Appeals in Johnson v. State, No.
1915-98, 2000 WL 140257 (Tex. Crim. App. 2000). tThis court âasks whether a neutral
review of all the evidence, both for and against the finding, demonstrates that the proof of guilt
is so obviously weak as to undermine confidence in the [the fact finderâs] determination, or the
proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof.â Id.
at *8; see also views all the evidence without the prism, in the light most favorable to theprosecution, and should set aside the verdict if it is so contrary to the overwhelming weight of
the evidence as to be clearly wrong and unjust. Clewis v. State, 922 S.W.2d 126 (Tex. Crim. App. 1996); Stone v. State, 823
S.W.2d 377 (Tex. App.âAustin 1992); Cain v. State, 958 S.W.2d 404 (Tex. Crim. App.
1997). Under the Johnson, Clewis, Stone and Cain standard, we consider the evidence of
defense witnesses and the existence of alternative hypotheses.
Â Â Â Â Â Â Farrell testified appellant âseemed to be intoxicated.â
Â Â Â Â Â Â Â Â Â Â Â Â Q.Â Â But you do not know for sure?
Â Â Â Â Â Â Â Â Â Â Â Â A.Â Â No sir.
Â Â Â Â Â Â Â Â Â Â Â Â Q.Â Â Itâs just an assumption on your part?
Â Â Â Â Â Â Â Â Â Â Â Â A.Â Â Yes sir.
Â Â Â Â Â Â Farrell further testified, âI remember seeing beer cans, I believe in the back seat,â and
that âthere were no open containers in the front compartment of the car.â
Â Â Â Â Â Â Officer Johnson testified that he noticed the strong smell of alcohol on [Appellantâs]
breath; he had a very unsteady stance; he did not believe [Appellant] had the normal use of his
physical faculties; his speech was slurred and he seemed disoriented. He [Johnson] thought the
cause was alcohol; and that Appellant refused both the breath and blood tests. Johnson did not
see any beer cans in Appellantâs car.
Â Â Â Â Â Â Appellant admitted he had one beer, thus accounting for the smell of alcohol. This was
substantiated by witness Thompson. There is no evidence Appellant drank more than one
beer. While Farrell believed he saw beer cans in the back of Appellantâs car, Officer Johnson
saw no beer cans. Appellant testified that no beer cans were present in his automobile. None
were introduced in evidence even though the vehicle was impounded by the police; hence,
under police control where it could have been searched and an inventory of its contents
photographed. Consumption of alcohol alone does not mandate a conclusion of intoxication.
Â Â Â Â Â Â Officer Johnson noticed slurred speech, disorientation and an unsteady stance. Appellant
testified he had worked since early in the morning putting together a show for children at a
recreation center and he was weary. It was late at night. Appellant was distressed, believing
his warrant had caught up with him. He testified he was suffering from sinus difficulties and
had taken Nyquil for that problem earlier in the evening. Officer Johnson testified Appellant
could not pass some simple âfield sobrietyâ tests, i.e., that he recited the alphabet but ended in
âTUZâ and stated he could not count backward from 38 to 22. This testimony was disputed
by Appellant.
Â Â Â Â Â Â Finally, this court has viewed Stateâs Exhibit 1, the video tape taken of Appellant less than
forty minutes after his arrest. The video tape fails to demonstrate that Appellant was
intoxicated and fails to demonstrate that Appellant was mentally or physically impaired. On
the video tape Appellant was cooperative with the officers, spoke clearly, and was able to
follow directions. He did not stumble, fall down or appear in any way disoriented. He recited
the alphabet without error. He counted backwards from 38 to 22 with only one error. The
video tape demonstrated that Appellant was not intoxicated. From all the evidence, we hold
that a finding of intoxication is so against the great weight and preponderance as to be unjust
and manifestly wrong. And given that the Stateâs burden of proof at trial âwas beyond a
reasonable doubt,â our review of the evidence, both for and against the finding, convinces us
that the verdict is clearly wrong and unjust.
Â Â Â Â Â Â Point two is sustained.
Â 

Â Â Â Â Â Â The judgment is reversed and the cause remanded for a new trial.


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â FRANK G. McDONALD
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Chief Justice (Retired)

Before Justice Vance,
Â Â Â Â Â Â Justice Gray and
Â Â Â Â Â Â Chief Justice McDonald (Retired)
Â Â Â Â Â Â Justice Gray (Dissenting opinion)
Reversed and remanded
Opinion delivered and filed April 19, 2000
Publish



an
 style='font-family:"CG Times"'>Davises and Ski River and made other findings. 
The court entered judgment on the juryÂs verdict for tortious
interference and declared that (1) the McCallas properly exercised their option
to purchase and (2) the Baker-Davis lease and its amendments are void and
unenforceable.Â  Ski River and the Davises appeal in twelve issues.

We will reverse that part of the
judgment that states (1) the Davises and Ski River take nothing against the McCallas and (2) the declaratory judgment
that the McCallas properly exercised their option to purchase the
Property.Â  We will render judgment that
the McCallaÂs option to purchase is void.Â 
We will further reform the declaratory judgment to provide that the
Baker-Davis lease is unconscionable and unenforceable, not void.Â  We will reverse the tortious interference
damages, exemplary damages, and all attorneyÂs fees awarded to the McCallas
against the Davises and Ski River.Â  We will affirm the
tortious interference damages, exemplary damages, and all attorneyÂs fees
awarded to Baker against the Davises and Ski River.Â  We will remand this cause
to the trial court to determine whether to award attorneyÂs fees for the Davises and Ski River under the Declaratory Judgment Act.Â  We will overrule or not address all other
issues.

BACKGROUND

Arthur William Glazier, Jr. owned
380 acres of land.Â  In 1992, Glazier entered
into a Â Â Â Â 99-year lease covering the
entire property with Appellee Walter Baker and his mother, Mary Baker (the
ÂGlazier leaseÂ).Â  In the Glazier lease,
the Bakers sub-leased a two-acre tract to the McCallas.Â  This sub-lease states in part:

That, in the event Lessees [Bakers] shall
purchase or otherwise obtain legal ownership of said Property from Lessor
[Glazier] and later elect to sell, Lessees [Bakers] hereby grant Sub-Lessees
[McCallas] the First Option to Purchase all, or a portion of said Property from
Lessees [Bakers] at market value.

Â 

In 1993, Glazier died, leaving the
property to Walter and Mary Baker.Â  Soon
thereafter, Walter Baker deeded his undivided interest to Mary Baker making her
the 100% owner of the property. 

In June 1994,
Mary Baker signed an exclusive one-year listing agreement with Glenna Calahan
to sell the entire 380 acres for $2,500 per acre.Â  The listing agreement stated that Baker
Âshall not rent or lease the Property during the term of this Listing without
the prior written approval of [Calahan]Â and Âshall not negotiate with any
prospective buyer who may contact [Mary Baker] directly, but refer all
prospective buyers to [Calahan].ÂÂ  In
August 1994, Calahan wrote to McCalla notifying him of the listing of the property
at $2,500 per acre and giving him 72 hours to exercise his option to
purchase.Â  Four days later, McCalla
responded that he desired to pursue his rights under the Glazier lease,
including but not limited to, his Âoption to purchase all, or a portion, of
said Property at market value.ÂÂ  He also
objected to the insertion of a 72-hour deadline to exercise his option.Â  He further stated:

the option cannot be evaluated until market
value of the property has been determined and, as a result, does not have to be
exercised until such time that either market value has been determined or a
bonafide offer to purchase executed by a third party, has been received by me.

Â 

McCalla also requested any
information Calahan may have regarding the sale of the property, including any
information to establish market value.Â 
Seven days later, McCalla again requested the same property information
from Calahan.Â  Eight days later, Calahan
sent him the MLS information sheet, title commitment, and other information.Â  

In October 1994, the
McCallaÂs appraisal was completed, which stated the value to be $1,200 per
acre.Â  This value was not disclosed to the
Bakers or Calahan.Â  Later in October, Coyt
Randal Johnston, on behalf of McCalla, sent a letter to Calahan stating that
they were working on a proposal to purchase the property and had secured an
appraisal to help evaluate the Âcurrent offer of $2,500.00 per acre.ÂÂ  He further stated:

. . . [McCalla] and I have determined that it is
in our best interest not to make an offer for the property at this time, since
we do not want to run the risk of offending you or the Bakers with an offer
that is unacceptably low.

Â 

I want to emphasize that we
continue to be interested in the property and will continue to evaluate our
position as time goes on.Â  We believe,
however, that Walt and Mary should have the opportunity to try to sell this
property to someone who is willing to pay their purchase price.Â  

Â 

Should another buyer submit a
contract on the property, [McCalla] will, of course, review the matter in
connection with his right of first refusal at that time.Â  In that regard, you should be aware that
nothing in this letter is intended to waive or alter any of the rights or
obligations between the Bakers and [McCalla] in connection with their various
contractual and lease agreements.

Â 

In April 1995, Mary Baker reduced
her asking price to $1,950 per acre.Â 
Later in 1995, Davis
contacted Calahan to inquire about purchasing 25 acres of the property at $1,800
per acre, but Mary Baker declined this offer because she wanted to sell the entire
380 acres.Â  In October 1995, Mary Baker
increased her asking price to $2,100 per acre.

As early as December
 15, 1995, Walter Baker
was referring to Stephen Davis as his Âmoney man.ÂÂ  In 1996, the Davises friendship with the Bakers increased, and they
visited them on a weekly basis.Â  

On January 29,
 1996, the Davises presented a Âgeneral business planÂ for
development of the property to a potential investor.Â  This included a preliminary sketch of ÂThe
Ski Ranch,ÂÂ  including the repair of the boat
ramp and roads, establishment of dump stations, building new boat ramp and ski
lake sites, establishing river front leases, building a runway, building a
store and club, installing a fuel farm, and continuing property studies for new
phases.

In February 1996,
McCalla wrote to Calahan acknowledging the change in the listing price to $2,100
per acre, but stated that his position had not changed since 1994.Â  He stated that he continued Âto be interested
in the property, in connection with my Right of First RefusalÂ and asked to be
kept informed.

A few days later on
February
 12, 1996, Davis entered into a 99-year lease of the entire
property with the Bakers (the ÂBaker-Davis leaseÂ).Â  The Davises told the Bakers that they intended to put in a
boat marina, landing strip, and golf course.Â 
The Davises did not provide a copy of the general business
plan to the Bakers nor did they discuss the plan with the Bakers.Â  The Baker-Davis lease states:

. . .

2.3 For the term of the lease, BAKER will pay
real estate taxes on said Property and DAVIS will be responsible for liability insurance.

Â 

2.4 All subleases (including but not limited to
the sublease with ANTHONY MCCALLA and CHERYL A. MCCALLA d/b/a C.A.M. PROPERTIES
[for two acres]) and their income are assigned to DAVIS by BAKER by the execution of this Agreement.

Â 

The lease sets
the rent at $3,000 per month for 12-1/2 years, then at $75 per month until the
lease ends.Â  The lease also contains a
non-disclosure clause that does not allow Baker, or any member of his family,
to discuss with anyone the Baker-Davis lease or any of its subleases.Â  The First Addendum to this lease provides for
an additional rent payment of $1,000 per month to pay for a house for the
Bakers.

In
March 1996, a First Amendment to the Baker-Davis lease was executed, which
assigned the lease from Davis
to Ski River.Â  It contains a provision
that, if the property is ever sold to anyone, Ski River would retain a leasehold interest for $75 per month in 25 acres of
the property.

In
April 1996, McCalla made an offer to purchase the 380 acres at $1,200 per
acre.Â  Sixteen days later, McCallaÂs
attorney threatened to file suit.Â  Two
days later, Mary Baker died of a heart attack.Â 
Following Mary BakerÂs death: (1) the Davises executed affidavits of heirship for Walter
Baker; (2) Walter BakerÂs attorney drew up a will naming the Davis children as his heirs, Stephen Davis as his
executor, and Karen Davis as his trustee; and (3) Walter BakerÂs attorney drew
up a statutory power of attorney naming Stephen Davis as his attorney-in-fact.

In
August 1996, a Second Amendment to the Baker-Davis lease was executed, which required
the DavisÂs approval before Baker could sell any of the propertyÂs
mineral rights.Â  The Second Amendment
stated that if Baker elected to sell, Davis had a right of first refusal to buy the
property for $600,000 minus any prior lease payments.

In
September 1996, the McCallas filed the lawsuit against Walter Baker, Ski River, and the Davises.

JUDGMENT

The judgment awards tortious
interference damages to the McCallas against Stephen Davis, Karen Davis, and Ski River in the amount of $69,000, exemplary damages in the amount of
$75,000, attorneyÂs fees in the amount of $247,000, and pre-judgment
interest.Â  In addition, attorneyÂs fees were
awarded of $25,000 in the event the case is appealed to the Court of Appeals
and $15,000 in the event the case is appealed to the Supreme Court of Texas.

The judgment awards tortious
interference damages to Walter Baker against Stephen Davis, Karen Davis, and Ski River in the amount of $50,000, exemplary damages in the amount of $20,000,
attorneyÂs fees in the amount of $37,000, and pre-judgment interest.Â  In addition, attorneyÂs fees were awarded of
$15,000 in the event the case is appealed to the Court of Appeals and $15,000
in the event the case is appealed to the Supreme Court of Texas.

The judgment orders that the Davises and Ski River take nothing by their suit against the McCallas, and contains a declaratory
judgment that:

Based on the evidence presented to the Court and
the juryÂs findings, the Court ENTERS a Declaratory Judgment that Plaintiffs
Anthony L. McCalla and Cheryl A. McCalla properly exercised their option to
purchase the Property. 

Â 

Based on the evidence presented to the Court and
the juryÂs findings, the Court ENTERS a Declaratory Judgment that the 99 year
Davis lease executed on or about February 12, 1996 filed for record on February
15, 1996 at BK 1940PG0011, the First Amendment to Lease executed on or about
March 12, 1996 and filed for record on March 11, 1996 at BK 1945PG0915, and the
Second Amendment to Lease executed on or about August 28, 1996 and all
amendments are void from their inception and are unenforceable.

Â 

ISSUES

Â 

We will address the DavisesÂ and Ski RiverÂs issues in the following order:

Â·Â Â Â Â Â Â  Error in denying the motion for new trial filed by the Davises and Ski River (issue eleven);

Â·Â Â Â Â Â Â  Whether McCallaÂs option to purchase the entire property is void and/or
was waived (issue three);

Â·Â Â Â Â Â Â  Whether Baker has standing to request the declaratory judgment that the
Baker-Davis lease and its amendments are void (issue seven);

Â·Â Â Â Â Â Â  Whether BakerÂs claims against the Davises and Ski River were brought in breach
of a tolling agreement (issue six);

Â·Â Â Â Â Â Â  Error in entering declaratory judgment that the Baker-Davis lease and
its amendments are void and unenforceable (issue one);

Â·Â Â Â Â Â Â  Whether the McCallas had standing to request the declaratory judgment
that the Baker-Davis lease and its amendments are void (issue four);

Â·Â Â Â Â Â Â  Error in submitting the issue of tortious interference to the jury
(issue two);

Â·Â Â Â Â Â Â  Whether the evidence is factually sufficient to support award of lost
profits to the McCallas and Baker (issue ten);

Â·Â Â Â Â Â Â  Whether the evidence is legally and factually sufficient to support
award of exemplary damages to the McCallas and Baker and whether the exemplary
damages were excessive (issue twelve);

Â·Â Â Â Â Â Â  Whether the evidence is legally and factually sufficient to support the
award of damages against Karen Davis (issue nine);

Â·Â Â Â Â Â Â  Error in awarding attorneyÂs fees to the McCallas and Baker because they
failed to segregate fees between claims (issue five); and

Â·Â Â Â Â Â Â  Whether the evidence is legally sufficient to support jury finding of
civil conspiracy (issue eight).

ISSUE
ELEVEN: Error in denying motion for new trial filed by the Davises and Ski River

Â 

The Davises and Ski River filed a motion for new trial asserting newly discovered evidence, i.e., that Walter Baker allegedly
committed perjury during the trial regarding disclosures made by the Davises to the Bakers.Â 
They argue that had the jury known this, the outcome of the trial would
have been different because Baker was the central witness on the issues of
fraud, undue influence, and unconscionability.Â 
In an affidavit filed in response, Walter Baker contradicts Karen
DavisÂs assertion that he told her his attorney asked him Âto forget some
things.Â

It is incumbent upon a party who
seeks a new trial on the ground of newly discovered evidence to show that (1)
the evidence has come to his knowledge since the trial; (2) it was not owing to
the want of due diligence that it did not come sooner; (3) it is not
cumulative; and (4) it is so material that it would probably produce a
different result if a new trial were granted.Â 
Jackson v. Van
Winkle, 660 S.W.2d 807, 809 (Tex. 1983).Â 
The trial court's ruling on such a motion will not be disturbed on
appeal unless an abuse of discretion occurred.Â 
Id.Â  ÂA new
trial will not be granted on the ground of newly-discovered evidence, unless it
is made to appear that it has come to the knowledge of the applicant since the
trial; that it could not have been sooner discovered by the exercise of
diligence; that it is not merely cumulative; that it is not for the purpose of
impeachment.ÂÂ  New
 Amsterdam Cas. Co. v. Jordan, 359 S.W.2d 864, 866 (Tex. 1962) (quoting Conwill v. Gulf, C. & S. F. Ry. Co., 85 Tex. 96, 19 S.W. 1017 (1892)).

We find the evidence submitted by
the Davises and Ski River was cumulative and would only have served to impeach BakerÂs trial
testimony.Â  We cannot say that any
impeachment would have probably produced a different result.Â  See Jackson, 660 S.W.2d at 809; New Amsterdam, 359 S.W.2d at 866.Â  The trial court did not abuse its discretion
in denying the motion for new trial on these grounds.Â  See Jackson, 660 S.W.2d at 809.Â  We overrule issue eleven.

ISSUE
THREE: Error in denying the DavisesÂ and Ski RiverÂs request
for declaratory judgment that the McCallasÂ Âfirst option to purchaseÂ is void and
unenforceable, and/or was waived

Â 

Ski River argues that the trial
court erred in denying its request for declaratory judgment that the McCallaÂs
purported Âfirst option to purchase,Â provided in the Glazier lease, is void
and unenforceable because it is too indefinite and violates the rule against
perpetuities.Â  In the alternative, they
argue that it was not exercised or was waived.

The pertinent part of the Glazier lease
provides:

That, in the event Lessees [Bakers] shall
purchase or otherwise obtain legal ownership of said Property from Lessor
[Glazier] and later elect to sell, Lessees [Bakers] hereby grant Sub-Lessees
[McCallas] the First Option to Purchase all, or a portion of said Property from
Lessees [Bakers] at market value.

Â 

We review declaratory judgments
under the same standards as other judgments and decrees. Lidawi v. Progressive County Mut. Ins.
Co., 112 S.W.3d 725, 730 (Tex.
App.ÂHouston [14th Dist.] 2003, no pet.); see also Tex. Civ. Prac. & Rem. Code Ann. Â§ 37.010 (Vernon 1997). We look to the procedure used to resolve
the issue at trial to determine the standard of review on appeal.Â  Lidawi,
112 S.W.3d at 730. Here, the trial court asked the jury whether McCalla had a
first option to purchase and whether he exercised the option.Â  In a second jury question, the jury found
that the McCallas exercised their option in accordance with the terms of the
first option under the Glazier Lease.Â 
However, the Davises and Ski River attack the option provision as void as a matter of law.

The rules regarding indefiniteness
of material terms of a contract are based on the concept that a party cannot
accept an offer to form a contract unless the terms of that contract are
reasonably certain. Restatement (Second)
Of Contracts Â§ 33(1) (1981).Â 
Thus, the actions of the parties may conclusively establish their
intention to enter a binding agreement even if some terms are left for future
agreement. Id. at cmt. a. To that end, Texas courts prefer to validate transactions rather
than void them. Dahlberg v. Holden,
150 Tex. 179, 238 S.W.2d 699, 701 (1951). A court may
not create a contract where none exists and they generally may not interpolate
or eliminate material terms. Id. However, parties may agree on some terms
sufficient to create a contract, leaving other provisions for later
negotiation. See Scott v. Ingle Bros.
Pacific, Inc., 489 S.W.2d 554, 555 (Tex. 1972). In certain situations, a court may
uphold an agreement by supplying missing terms, such as implying a reasonable
price. Bendalin v. Delgado, 406
S.W.2d 897, 900 (Tex. 1966).

The Restatement asserts that
contract terms are reasonably certain "if they provide a basis for
determining the existence of a breach and for giving an appropriate
remedy." Restatement (Second) Of
Contracts Â§ 33(2) (1981). This conforms to the policy that parties, and
not the courts, should make contracts. Where the parties intended to make an
agreement and there is a certain basis for granting a remedy, courts should
find the contract terms definite enough to provide a remedy. Id. at cmt. b. Uncertainty of terms can, however, preclude
one remedy without affecting others. For example, less certainty is necessary
in a suit for damages than one for specific performance. See Kirkwood & Morgan, Inc. v. Roach, 360 S.W.2d 173, 176 (Tex.
Civ. App.ÂSan Antonio 1962, writ ref'd n.r.e.); but see Bendalin, 406 S.W.2d at 900 (the Supreme Court held that
lack of an express agreement on price was not fatal to maintenance of a suit
for specific performance of an oral agreement to purchase stock).

When essential terms are missing,
courts often find no more than an agreement to agree. See Pine v. Gibraltar Sav.
Ass'n, 519 S.W.2d 238, 244
(Tex. Civ. App.ÂHouston [1st Dist.] 1975, writ ref'd n.r.e.). Courts have,
however, implied terms when the surrounding circumstances left little doubt as
to the parties' intentions. See Morgan v.
Young, 203 S.W.2d 837, 846 (Tex. Civ. App.ÂBeaumont 1947, writ ref'd
n.r.e.). 

Here, the contract clause sets out
with certainty the term that the Bakers must obtain legal ownership as a
prerequisite to validity of any obligation.Â 
However, the contract clause leaves many terms for future negotiation
and agreement. These include:

(1)Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
What is the
definition of Âsaid PropertyÂ (the entire 380-acre tract or the two acres being
subleased by the McCallas);

(2)Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
What is the
definition of a ÂportionÂ of said Property;

(3)Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
Whether
listing property on the market (i.e.,
solicitation for offers) is an election to sell;

(4)Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
Whether a
listing agreement is an election to sell;

(5)Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
Whether a
bona fide offer from a third party purchaser was required before the option
could be exercised;

(6)Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
Whether an
election to sell a portion of the property was sufficient for McCalla to
exercise the option;

(7)Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
When market
value is to be determined;

(8)Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
What is the
method to determine market value;

(9)Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
How long does
McCalla have to exercise his option after notification of BakerÂs election to
sell;

(10)Â Â Â Â Â Â Â Â Â Â 
Whether the
McCallas can ever compel a sale of all or a portion of the Property;

(11)Â Â Â Â Â Â Â Â Â Â 
Whether
Baker can change her mind after an election to sell the property if she is
dissatisfied with an offer from McCalla in comparison with either a bona fide
purchaser offer or retaining the property; and 

(12)Â Â Â Â Â Â Â Â Â Â 
For how
long is the option valid?

These provisions requiring future
negotiation suggest that the parties are only agreeing to make a future
contract.Â  An agreement leaving material
terms to be agreed upon later is not definite and specific as to material and
essential terms and is, therefore, unenforceable. See Parker Chiropractic Research Foundation v. Fairmont Dallas Hotel Co.,
500 S.W.2d 196, 201 (Tex. Civ. App.ÂDallas 1973, no writ).Â  When essential terms are missing, we may find
no more than an agreement to agree. See
Pine, 519 S.W.2d at 244. Furthermore, a contract providing for an agreement
to be negotiated in the future is void. See,
e.g., Texas State Optical v. Caylor, 387 S.W.2d 461, 464 (Tex. Civ. App.ÂBeaumont
1965, writ ref'd n.r.e.). Therefore, we find the Âfirst option to purchaseÂ is
a void provision of the Glazier lease.Â 
Thus, the jury findings are immaterial.

It was error for the trial court to
deny entering a declaratory judgment that the McCallaÂs first option to
purchase is indefinite and void.Â  In
addition, it was error to enter a declaratory judgment that the McCallas
exercised their option.Â  We need not
address whether the option was waived because we have found the option void.Â  

We sustain issue three.Â  We will reverse that part of the judgment
that states (1) the Davises and Ski River take nothing against the McCallas and (2) the declaratory judgment
that the McCallas properly exercised their option to purchase the
Property.Â  We will render judgment as
follows:

Based on the evidence presented to the Court,
the Court RENDERS a Declaratory Judgment that Plaintiffs Anthony L. McCallaÂs
and Cheryl A. McCallaÂs option to purchase the Property is void as a matter of
law.

Â 




ISSUE
SEVEN: BakerÂs standing to request declaratory judgment to declare Baker-Davis
lease and its amendments are void.

Â 

The general test for standing in Texas requires that there Â(a) shall be a real
controversy between the parties, which (b) will be actually determined by the judicial
declaration sought.Â Texas Ass'n
of Bus. v. Texas Air Control Bd.,
852 S.W.2d 440, 446 (Tex. 1993) (citing Board
of Water Engineers v. City of San Antonio, 155 Tex. 111, 114, 283 S.W.2d
722, 724 (1955)).Â  The Declaratory
Judgment Act provides that Âall persons who have or claim any interest that
would be affected by the declaration must be made parties.ÂÂ  Tex.
Civ. Prac. & Rem. Code Ann. Â§ 37.006(a) (Vernon 1997).

The
Baker-Davis lease states:

Â 

The
Parties of this Agreement (ÂAgreementÂ) are as follows:

1.1Â Â Â Â Â Â Â Â Â Â Â Â 
MARY BAKER
and her son, WALT BAKER (collectively referred to as ÂBAKERÂ). . . .

Â 

The
first amendment to the Baker-Davis lease states:

Â 

THIS
FIRST AMENDMENT TO LEASE (this ÂFirst AmendmentÂ) is dated to be effective as
of the 12th day of March, 1996, by and between MARY BAKER and her son, WALT
BAKER (collectively referred to herein as ÂBAKERÂ). . . .

Â 

At the time of
the second amendment, Walter Baker was the owner of the property and the second
amendment states:

THIS SECOND AMENDMENT TO LEASE (this ÂSecond
AmendmentÂ) is dated to be effective as of the 28th day of August, 1996, by and
between WALT BAKER (ÂWalt BakerÂ) and SKI RIVER DEVELOPMENT[S], INC., a Texas
Corporation (ÂSki RiverÂ).

Â 

As signatory of
the lease and its amendments, Walter Baker was in privity of contract with the Davises and Ski River.Â  Thus, the controversy that
exists between Baker, the Davises, and Ski River will be affected by the declaratory judgment
sought.Â  See Tex. Civ. Prac. &
Rem. Code Ann. Â§ 37.006(a); Texas AssÂn
of Bus., 852 S.W.2d at
446.Â  We find that Walter Baker has
standing.Â  We overrule issue seven.

ISSUE
SIX: BakerÂs claims against the Davises were brought
in breach of a tolling agreement

Â 

On September 4, 2001, Baker, the Davises, and Ski River entered a Âtolling agreementÂ that prohibited the Davises and
Baker from asserting any cross-claims against each other until the McCalla claims
were resolved.Â  In violation of this
tolling agreement, Baker asserted cross-claims against the Davises and Ski River on October 23, 2002.Â 
However, on November 21, 2002, the parties signed a Rule 11 agreement that
ÂWalt Baker will maintain his cross claims in this case.ÂÂ  Thus, any violation of the tolling agreement
was cured by the Rule 11 agreement.Â  We
overrule issue six.

ISSUE
ONE: Error by entering declaratory judgment voiding the Baker-Davis lease and
its amendments

Â 

The trial court entered a
declaratory judgment that the Baker-Davis lease and its amendments are void
based on the jury findings that the Baker-Davis lease and its amendments were
procured by fraud, undue influence, and unconscionability.

If a contract is unconscionable, it
is unenforceable.Â  See In re Turner Bros. Trucking Co., 8 S.W.3d 370, 375 (Tex.
App.ÂTexarkana 1999, no pet.) (referring to an arbitration agreement); El Paso Natural Gas Co. v. Minco Oil &
Gas Co., 964 S.W.2d 54, 60 (Tex. App.ÂAmarillo 1997), revÂd on other grounds, 8 S.W.3d 309 (Tex. 1999) (referring to gas
purchase agreement under the Texas Business and Commerce Code Â§ 2.302(a)); Tricontinental Leasing Corp. v. Law Office
of Richard W. Burns, 710 S.W.2d 604, 609 (Tex. AppÂHouston [1st Dist.]
1986, writ. refÂd n.r.e.) (referring to disclaimer provisions in a lease); Restatement (Second) of Contracts Â§
208.Â  Proof of unconscionability begins
with two broad questions: (1) the procedural aspect, i.e., how did the parties arrive at the terms in controversy; and (2)
the substantive aspect, i.e., are
there legitimate commercial reasons justifying the terms of the contract. Â Pony
Express Courier Corp. v. Morris, 921 S.W.2d 817, 821 (Tex. App.ÂSan Antonio
1996, no pet.).Â  In other words, in
deciding the fairness of a contractÂs substantive terms, the court must also
consider whether there were Âprocedural abuses,Â such as an unfair bargaining
position between the parties at the time the agreement was made.Â  Tricontinental,
710 S.W.2d at 609.Â  Under Texas law, the party asserting unconscionability of a
contract bears the burden of proving both procedural and substantive
unconscionability.Â  In re Turner, 8 S.W.3d at 375; Wade
v. Austin, 524 S.W.2d 79, 86 (Tex. Civ. App.ÂTexarkana 1975, no writ.). 

In determining whether a contract is
unconscionable, we must examine (1) the Âentire atmosphereÂ in which the
agreement was made; (2) the alternatives, if any, available to the parties at
the time the contract was made; (3) the Ânon-bargaining abilityÂ of one party; (4)
whether the contract was illegal or against public policy; and (5) whether the
contract is oppressive or unreasonable. Â Wade, 524 S.W.2d at 86.Â  The totality of the circumstances must be
assessed as of the time the contract was formed.Â  El
 Paso,
964 S.W.2d at 61.Â  It is important to
consider whether there is any gross disparity in the values exchanged.Â  Restatement
(Second) of Contracts, Â§ 208, cmt. c.Â 
Gross inequality of bargaining power, together with terms unreasonably
favorable to the stronger party may show that the weaker party had no
meaningful choice, no real alternative, or did not in fact assent or appear to
assent to the unfair terms.Â  Id. at cmt. d.Â 
Factors that may contribute to an unconscionable bargaining process
include: (1) knowledge of the stronger party that the weaker party will be
unable to receive substantial benefits from the contract; and (2) knowledge of
the stronger party that the weaker party is unable reasonably to protect his
interests by reason of physical or mental infirmities, ignorance, illiteracy or
inability to understand the language of the agreement.Â  Id.Â  The
grounds for substantive abuse must be sufficiently shocking or gross to compel
the court to intercede, and the same is true for procedural abuseÂthe
circumstances surrounding the negotiations must be shocking.Â  El
 Paso,
964 S.W.2d at 62.

The ultimate question of
unconscionability of a contract is one of law, to be decided by the court.Â  El
 Paso,
964 S.W.2d at 60; see also In re Turner, 8 S.W.3d at 375; Tricontinental, 710 S.W.2d at 609.Â  In El
 Paso,
the court stated:

This suggests that our review of the matter is de novo. Yet, it cannot be forgotten
that the decision of whether some agreement is or is not unconscionable is
dependent upon the existence of facts which allegedly illustrate
unconscionability. And, as to the existence of those facts, our review is not de novo. In other words, we cannot
review the record, divine our own inferences from the evidence contained
therein, resolve conflicts in same, or decide what evidence to believe and what
not to believe. The power to do those things, that is, to find facts, lies with
the trial court. Once it has exercised that power, we must then defer to the
findings made. And, as long as the findings enjoy sufficient evidentiary
support, they cannot be disturbed, even though we may have construed the
evidence differently. Nevertheless, this does not prevent us from assessing whether
the findings made illustrate unconscionability for, again, that is a question
of law. Nor does it prevent us from deciding whether the evidence of record,
when viewed in a light most favorable to the court's findings and regardless of
its potential inferences, illustrates unconscionability, for that too is a
question of law.

Â 

Interestingly, at least one court has likened
the mental gymnastics in which we must partake to the standard of abused
discretion. See, e.g., Pony Express
Courier Corp. v. Morris, 921 S.W.2d at 820. Use of the latter is helpful in
situations involving mixed questions of law and fact, according to the Pony Express court. Id. It enables the reviewing court to reassess de novo that part of the decision
involving the law and its application while recognizing the trial court's
authority to weigh and interpret the evidence. Pony Express Courier Corp. v. Morris, 921 S.W.2d at 820; accord, Walker v.
Packer, 827 S.W.2d 833, 839-40
(Tex. 1992); see
Restatement (Second) of Contracts
Â§ 208, cmt. f (stating that the appellate court will consider whether the
proper standards were applied). Given this, we too adopt it as indicative of
the framework in which the reviewing court must act.

Â 

El
 Paso,
964 S.W.2d at 60-61.

Here, the trial court submitted the
issue of unconscionability to the jury, and the jury found the lease, its first
addendum, first amendment, and second amendment were the result of
unconscionability.Â  The declaratory
judgment entered stated that the lease and its first and second amendments are
void from their inception and are unenforceable.Â  Because an unconscionable contract is
unenforceable, we will determine if this declaratory judgment resulted from a
proper determination of unconscionability.Â 
The trial court did not make any separate factual findings regarding
unconscionability.Â  

We find the following evidence
supports procedural unconscionability of the Baker-Davis lease:

(1)Â Â Â Â Â Â Â Â Â Â Â Â Â 
The Davises
were aware that the Bakers were in desperate need for money at the time they
signed the leaseÂthe Bakers were living in a trailer home heated by a stove and
were so far in debt that they needed money to survive;

(2)Â Â Â Â Â Â Â Â Â Â Â Â Â 
The Davises told the Bakers that Mary Baker would be able
to get Medicaid if she entered the lease;

(3)Â Â Â Â Â Â Â Â Â Â Â Â Â 
Ms. Calahan
met with the Bakers and told them that the sale of the property would be better
in terms of long-term income and the tax consequences; the Davises convinced the Bakers that the lease was better
because it would give them steady monthly income;

(4)Â Â Â Â Â Â Â Â Â Â Â Â Â 
Walter
Baker testified that he and Mary felt they had to enter the lease;

(5)Â Â Â Â Â Â Â Â Â Â Â Â Â 
The Bakers
did not see the final draft of the lease until the day they signed it;

(6)Â Â Â Â Â Â Â Â Â Â Â Â Â 
Walter
Baker testified that he and Mary felt they could not change anything in the
lease before signing it;

(7)Â Â Â Â Â Â Â Â Â Â Â Â Â 
Walter
Baker testified that he spoke to his CPA in general terms after his first
meeting with Davis regarding whether it would be easier to sell it in one lump
sum or lease it and get a monthly paymentÂthe CPA said he needed more details
to run the numbers (Baker never went back to the CPA);

(8)Â Â Â Â Â Â Â Â Â Â Â Â Â 
Walter
Baker testified that he and Mary were the only ones to review the terms of the
lease;

(9)Â Â Â Â Â Â Â Â Â Â Â Â Â 
The Davises did not explain any of the terms to the Bakers
before they signed the lease;

(10)Â Â Â Â Â Â Â Â Â 
Walter
Baker testified that he did not understand the legal language and did not know
what the terms meant (e.g.,
severability, specific performance, release, warranty, assignment, termination,
possessory rights);

(11)Â Â Â Â Â Â Â Â Â 
The Davises never told the Bakers that they had tried to
purchase 25 acres of this property the previous summer;

(12)Â Â Â Â Â Â Â Â Â 
When Davis was asked how he expected the Bakers to survive
after the 12-1/2 years, he testified that they could have survived, Walter
Baker could work, and Â[i]t was a window of opportunity for both of us.Â

(13)Â Â Â Â Â Â Â Â Â 
The Davises told the Bakers that they planned to put in a
boat marina, landing strip and golf course.Â 
However, the Davises did not provide a copy of their general business
plan and did not mention the contents of this plan, which could have affected
the real estate taxes.Â  These plans
included development of dump stations for trailer waste, a new boat area, an
engineered ski lake, electricity, excavation of new channels, installation of a
fuel farm, and marketing of ski lake site lots as long-leasehold property;

(14)Â Â Â Â Â Â Â Â Â 
Walter
Baker testified that he did not think he was selling his property to the Davises;

(15)Â Â Â Â Â Â Â Â Â 
Walter
Baker testified that Davis brought so many papers to him that he was
confused as to what was what;

(16)Â Â Â Â Â Â Â Â Â 
The Bakers
were not experienced with formal contractingÂthey had about 35-40 current lake-lot
subleases but they were informal agreements without any property descriptions;

(17)Â Â Â Â Â Â Â Â Â 
The Bakers
did not keep any accounting books for their store;

(18)Â Â Â Â Â Â Â Â Â 
The Bakers
filed tax returns for their farm, but never filed tax returns for anything
else; and

(19)Â Â Â Â Â Â Â Â Â 
The DavisesÂ attorney drafted the lease.

We find the following terms support substantive
unconscionability of the Baker-Davis lease:

(1)Â Â Â Â Â Â Â Â Â Â Â Â Â 
The Bakers
were required to pay all real estate taxes for the 99-year term of the lease,
which were estimated by Calahan at $132.92 per month for the next 12-1/2 years
($1,595 per year);

(2)Â Â Â Â Â Â Â Â Â Â Â Â Â 
The Davises had to pay $3,000 per month for only 12-1/2Â  years; after that period, their rent would
decrease to $75 per month, which is less than the estimated tax payment;

(3)Â Â Â Â Â Â Â Â Â Â Â Â Â 
All current
sublease income would be assigned to the Davises (this was estimated at $1,668
per month based on testimony); thus, the Bakers were already entitled to this
amount and would only get $1,332 more per month than they were currently
entitled to and substantially less after 12-1/2 years;

(4)Â Â Â Â Â Â Â Â Â Â Â Â Â 
The Davises could terminate the lease at any time by simply
giving written notice;

(5)Â Â Â Â Â Â Â Â Â Â Â Â Â 
The Bakers
lost all possessory rights (except the right to have a small store through
December 1996);

(6)Â Â Â Â Â Â Â Â Â Â Â Â Â 
The Bakers
could not discuss or be a party to any communication about this lease and/or
any subleases that the Davises may enter under this lease;

(7)Â Â Â Â Â Â Â Â Â Â Â Â Â 
The release
clause prevented the Bakers from selling the land under their current listing
agreement with Calahan, and if the Bakers did sell the land, they would owe the
Davises $10,000 plus all rent payments made to that
point; and

(8)Â Â Â Â Â Â Â Â Â Â Â Â Â 
The release
clause prevented the Bakers from selling the land while the lease was in
effect.

This evidence illustrates unfair
bargaining positions, unfair terms, gross disparity in the value exchanged, no
substantial benefit to the Bakers, shocking circumstances of the procurement of
the lease, and shocking/gross lease terms.Â 
See Wade, 524 S.W.2d at 86; El
 Paso,
964 S.W.2d at 61; Restatement (Second)
of Contracts, Â§ 208.Â  Evidence of both
procedural and substantive unconscionability of the Baker-Davis lease also supports
a determination that the first addendum and the first and second amendments to the
lease are unconscionable.Â  We find that
the trial court did not abuse its discretion in entering a declaratory judgment
finding the Baker-Davis lease and its amendments unenforceable.Â  See
El Paso, 964 S.W.2d at 60-61.Â  However, the finding of unconscionability
would not make the Baker-Davis lease void.[5]Â  

We sustain issue one in part and
overrule in part.Â  We will reform the
declaratory judgment to read:

Based on the evidence presented, the Court RENDERS
a Declaratory Judgment that the 99-year Davis lease executed on or about
February 12, 1996, filed for record on February 15, 1996, at BK 1940PG0011, the
First Amendment to Lease executed on or about March 12, 1996, and filed for
record on March 11, 1996, at BK 1945PG0915, and the Second Amendment to Lease
executed on or about August 28, 1996, and all amendments thereto are unconscionable
and thus unenforceable from their inception.

Â 

ISSUE
FOUR: McCallaÂs standing to request declaratory judgment to void Baker-Davis
lease

Â 

Because we found in issues one and seven
that Baker has standing to request the declaratory judgment to void the
Baker-Davis lease and that the lease and all its amendments unenforceable, we
need not address whether the McCallas have standing to do the same.




ISSUE
TWO: Error in submitting issues of tortious interference to jury

Â 

It is unclear which tortious
interference jury questions are at issue here.Â 
Thus, we will review the three jury questions relating to tortious
interference.Â  In question 5, the jury
found that Ski River and the Davises intentionally interfered with the Glazier lease
between the McCallas and Baker.Â  In
question 24, the jury found that Ski River and the Davises wrongfully interfered with the McCallasÂ
prospective contractual relation with Baker.Â 
Because we have found that McCallasÂ option is void, we find that the
trial court erred in submitting these two jury questions as a matter of
law.Â  There is no evidence that the Davises and Ski River interfered with the McCallasÂ valid lease rights.

In question 25, the jury found that Ski River and the Davises tortiously interfered with BakerÂs use and
enjoyment of his property.Â  Ski River objected that this is not a cause of action upon which relief can
be based and it is duplicative of other relief requested.

Under the general rule, there are at
least two causes of action for tortious interference: (1) tortious interference
with the right to dispose of property; and (2) tortious interference with the
peaceful use and enjoyment of property rights. Suprise v. Dekock, 84 S.W.3d 378, 380 (Tex. App.ÂCorpus Christi 2002, no pet.).Â  A cause of action for tortious interference
with the right to dispose of property is, in essence, a claim for tortious
interference with a prospective contract or prospective business relation.Â  Id. at 381.Â  Texas law protects prospective contracts from
interference.Â  Id.Â  A cause
of action for tortious interference with peaceful use and enjoyment of property
is, in essence, a claim for intentional invasion of, or interference with,
property rights.Â  Id. at 382.Â 
This cause of action also exists under Texas law.Â  Id. at 383.Â 
Thus, tortious interference with BakerÂs use and enjoyment of his land
is a separate cause of action and is not cumulative.Â  See id.
at 380-83.

We sustain issue two as to questions
5 and 24 and overrule it as to question 25.Â 
We turn to the tortious interference damages in issue ten.

ISSUE
TEN: Factual sufficiency of lost profits awarded to the McCallas and Baker

Â 

In Texas, a party bringing suit for tortious
interference with a contract must prove four elements: (1) a contract subject
to interference exists; (2) the act of interference was willful and
intentional; (3) the intentional act proximately caused the plaintiff's damage;
and (4) actual damage or loss occurred.Â  Juliette Fowler Homes v. Welch Assocs.,
793 S.W.2d 660, 665 (Tex.
1990).Â  The first element requires the
existence of a valid contract; a void contract cannot serve as the basis for a
tortious interference claim. See id.;
Clements v. Withers, 437 S.W.2d 818,
821 (Tex. 1969).Â  

As to the tortious interference in
jury question 5, because there can be no tortious interference with a void
contract, we reverse the McCallasÂ tortious interference damages award of
$69,000 against Ski River and the Davises.Â  We
sustain issue ten as to the McCallasÂ tortious interference damages award.

According to question 26, the
damages awarded to Baker for tortious interference with use and enjoyment of
his land were either lost profits and/or damages for loss of use and enjoyment
of his property.Â  Ski River and the Davises argue only that there was insufficient evidence
to support any lost profits awarded to Baker. 

To successfully challenge a
multi-element damages award (one dollar amount for multiple elements of
damages) on appeal, an appellant must address all of the elements and show that
the evidence is factually insufficient to support the entire damages
award.Â Â  Price v. Short, 931 S.W.2d 677, 688 (Tex. App.ÂDallas 1996, no
writ); Greater Houston Transp. Co. v.
Zrubeck, 850 S.W.2d 579, 589 (Tex. App.ÂCorpus Christi 1993, writ
denied).Â Â  A failure to address an
element of damages results in waiver of the sufficiency challenge.Â Â  Price,
931 S.W.2d at 688. 

Thus, by failing to challenge the
sufficiency of the evidence of lost use and enjoyment, Ski River and the Davises have waived their factual sufficiency challenge
on the damages awarded to Baker. Â See id.Â 


We overrule issue ten as to BakerÂs
tortious interference damages award.

ISSUE
TWELVE: Legal and
factual sufficiency of evidence of exemplary damages awarded to the McCallas and
Baker and whether the exemplary damages were excessive

Â 

Because we have reversed the
McCallasÂ tortious interference damages in issue ten, we must also reverse the
McCallasÂ accompanying exemplary damages of $75,000 against Ski River and the Davises.Â  We
sustain issue twelve as to the McCallasÂ exemplary damages.

As to Baker, Ski River and the Davises first argue legal and factual sufficiency of
the evidence to support a finding that the harm to Baker resulted from fraud or
malice.Â  The argument in their appellate
brief consists of: ÂThere was no evidence to support the juryÂs findings that
the harm to the McCallas and Baker resulted from fraud or malice (Questions 8
and 28); in the alternative, the findings were against the great weight and
preponderance of the evidence.ÂÂ  Second,
they argue that if the evidence supporting an award of exemplary damages is
sufficient, the exemplary damages awarded are excessive ($50,000 in actual
damages and $20,000[6] in
exemplary damages).

Legal and factual sufficiency

Ski River and the DavisesÂ legal and factual sufficiency argument is one sentence
in their 50 page brief and contains no citations to the reporter's record.Â  The Rules of Appellate Procedure require that
Â[t]he brief must contain a clear and concise argument for the contentions
made, with appropriate citations to authority and to the record.ÂÂ  Tex.
R. App. P. 38.1(h), 38.2(a)(1).Â 
This is especially important in a case such as this with a voluminous
appellate record.Â  By their failure, Ski River and the Davises have waived their legal and factual sufficiency
complaints about the jury findings.Â  E.g. Franklin v. Enserch, Inc., 961
S.W.2d 704, 711 (Tex. App.ÂAmarillo 1998, no pet.); Sisters of Charity of the Incarnate Word v. Gobert, 992 S.W.2d 25,
31 (Tex. App.ÂHouston [1st Dist.] 1997, no pet.); Leyva v. Leyva, 960 S.W.2d 732, 734 (Tex. App.ÂEl Paso 1997, no
writ). 

Excessive

Exemplary damages must be reasonably
proportioned to compensatory damages. Â Â Alamo NatÂl
Bank v. Kraus, 616 S.W.2d 908,
910 (Tex. 1981).Â 
There is no set rule between the amount of actual and exemplary damages
that will be considered reasonable.Â  Id.Â  That
determination is dependent upon the facts of a particular case.Â  Id.Â  Factors
to consider in determining whether an award of exemplary damages is reasonable
include: (1) the nature of the wrong, (2) the character of the conduct
involved, (3) the degree of culpability of the wrongdoer, (4) the situation and
sensibilities of the parties concerned, and (5) the extent to which such
conduct offends a public sense of justice and propriety.Â  Id. Â Â 

The ratio of exemplary damages is
approximately 0.40 the amount of compensatory damages for Baker.Â  Considering the Kraus factors, we find this ratio is not excessive.Â  See id.

We overrule issue twelve as to
BakerÂs exemplary damages.

ISSUE
NINE: Legal
sufficiency of evidence to support judgment against Karen Davis

Â 

The tortious interference damages
awarded to the McCallas against Karen Davis have been reversed under issue ten.Â  Ski River and the Davises argue that there is no evidence to support the
tortious interference damages awarded to Baker against Karen Davis.Â  They argue she was only occasionally present,
married to Stephen Davis, and did not sign the lease or its amendments.

We review no-evidence points by considering only the evidence and all
reasonable inferences that support the jury=s finding while disregarding all evidence and inferences to the
contrary.Â  Orozco v. Sander, 824
S.W.2d 555, 556 (Tex. 1992).Â  If there is more than a
scintilla of evidence to support the finding, the no-evidence challenge must
fail. Â Id.Â  There is Âsome evidenceÂ when
the proof furnishes a reasonable basis for reasonable minds to reach differing
conclusions as to the existence of a crucial fact.Â  Id.Â  If the evidence is so weak as to
do no more than create a mere surmise or suspicion of its existence, its legal
effect is that it is no evidence.Â  Haynes
& Boone v. Bowser Bouldin, Ltd., 896 S.W.2d 179, 182 (Tex. 1995).Â  Generally, if the court of appeals sustains a
"no evidence" point, it is the court's duty to render judgment for
appellant.Â  Vista Chevrolet, Inc. v.
Lewis, 709 S.W.2d 176, 176 (Tex. 1986) (quoting NatÂl
Life Accident Ins. Co. v. Blagg, 438 S.W.2d 905, 909 (Tex. 1969)).Â  

A no-evidence point must and can only be sustained when the record
reveals: (1) a complete absence of evidence of a vital fact; (2) rules of law
or rules of evidence bar the appellate court from giving weight to the only
evidence offered to prove a vital fact; (3) the evidence offered to prove a
vital fact is no more than a mere scintilla; and (4) the evidence conclusively
establishes the opposite of a vital fact.Â 
Juliette Fowler Homes, Inc. v. Welch Assocs., Inc., 793 S.W.2d
660, 666 n.9 (Tex. 1990) (citing Calvert, "No Evidence" and
"Insufficient Evidence" Points of Error, 38 Tex. L. Rev. 361, 362â63 (1960)).

We have recited the evidence about procedural unconscionability. Â Karen Davis also testified that she (1) was very
familiar with the landmarks on the property; (2) had an emotional attachment to
the property; (3) first approached the Bakers about leasing the property in
January 1996 with Mr. Davis; (4) was involved in the negotiation process with
the Bakers; (5) took the final draft to the Bakers with Mr. Davis; and (6) was
present when everyone signed the lease.

Considering only the evidence and all reasonable
inferences that support the jury=s finding of tortious
interference of use and enjoyment of his property by Karen Davis, we find legally
sufficient evidence to support this finding, i.e., more than a scintilla of evidence to support the finding.Â  See
Orozco, 824 S.W.2d at 556; Juliette
Fowler, 793 S.W.2d at 666 n.9.Â  We
overrule issue nine.

ISSUE
FIVE: Error in awarding attorneyÂs fees to McCallas and Bakers because they failed
to segregate fees between claims

Â 

Both the Bakers and the McCallas requested
attorneyÂs fees under the Declaratory Judgment Act.Â  See
Tex. Civ. Prac. & Rem. Code Ann.
Â§Â§ 37.001, 38.001 (Vernon 1997).Â  In
a declaratory judgment action, a court Âmay award . . . reasonable and
necessary attorney's fees as are equitable and just.ÂÂ  Id. Â§ 37.009.Â 
(Vernon 1997).

An award of attorneyÂs fees to the
McCallas would not be Âequitable and justÂ after finding that their option is
void.Â  See id.Â  Thus, we sustain
issue five as to the McCallasÂ attorneyÂs fees and reverse all attorneyÂs fees
awarded to the McCallas.

Because we reformed the declaratory
judgment that the Baker-Davis lease is unenforceable, we must assess whether
Baker is entitled to attorneyÂs fees for this declaratory judgment.Â  To show the reasonableness and necessity of attorney's
fees, the plaintiff is required to show that the fees were incurred while suing
the defendant sought to be charged with the fees on a claim which allows
recovery of such fees.Â  Stewart Title Guaranty Corp. v. Sterling, 822 S.W.2d 1, 10 (Tex. 1991).Â  A
recognized exception to this duty to segregate arises when the attorney's fees
rendered are in connection with claims arising out of the same transaction and
are so interrelated that their Âprosecution or defense entails proof or denial
of essentially the same facts.Â Id. at 11.Â 
Therefore, when the causes of action involved in the suit are dependent
upon the same set of facts or circumstances and thus are Âintertwined to the
point of being inseparable,Â the party suing for attorney's fees may recover
the entire amount covering all claims.Â  Id.Â  We
find that BakerÂs cross-claims were so intertwined with his declaratory
judgment cross-claims that segregation of attorneyÂs fees was not
required.Â  See id. at 10-11. 

Thus, we overrule issue five as to
the attorneyÂs fees awarded to Baker. 

In addition, the jury found the
reasonable and necessary attorneyÂs fees for the Davises and Ski River are $100,000 for preparation and trial, $15,000 for an appeal to
the Court of Appeals, and $15,000 for an appeal to the Supreme Court of Texas.Â  We must remand this cause to the trial court to
determine whether to award Âequitable and justÂ attorneyÂs fees to Ski River
and the Davises and against the McCallas under the Declaratory Judgment Act,
based on our holding under issue one.Â  See Tex.
Civ. Prac. & Rem. Code Ann. Â§ 37.009.

ISSUE
EIGHT: Legal sufficiency of civil conspiracy finding.

Â 

Because the trial court did not
enter a judgment on this jury finding, we need not address this issue.Â  

CONCLUSION

We have sustained issue three,
overruled issues six, seven, nine, and eleven, and overruled in part and
sustained in part issues one, two, five, ten, and twelve.Â  We did not need to address issues four and
eight.Â  Thus, we reverse that part of the
judgment that states (1) the Davises and Ski River take nothing against the McCallas and (2) the declaratory judgment
that the McCallas properly exercised their option to purchase the
Property.Â  We render judgment as follows:

Based on the evidence presented to the Court,
the Court RENDERS a Declaratory Judgment that Plaintiffs Anthony L. McCallaÂs
and Cheryl A. McCallaÂs option to purchase the Property is void as a matter of
law.

Â 

We will reform the declaratory judgment to read:

Based on the evidence presented, the Court RENDERS
a Declaratory Judgment that the 99-year Davis lease executed on or about
February 12, 1996, filed for record on February 15, 1996, at BK 1940PG0011, the
First Amendment to Lease executed on or about March 12, 1996, and filed for
record on March 11, 1996, at BK 1945PG0915, and the Second Amendment to Lease
executed on or about August 28, 1996, and all amendments thereto are
unconscionable and thus unenforceable from their inception.

Â 

We reverse and delete from the judgment the
tortious interference damages, exemplary damages, and all attorneyÂs fees
awarded to the McCallas against the Davises and Ski River.Â  We affirm the judgment
awarding tortious interference damages, exemplary damages, and all attorneyÂs
fees to Baker against the Davises and Ski River.Â  We remand
this cause to the trial court to determine whether to award attorneyÂs fees to the
Davises and Ski River and against the McCallas under the Declaratory Judgment Act.

Â 

BILL VANCE

Justice

Â 

Before Chief Justice Gray,

Justice Vance, and

Justice Reyna

(Chief Justice Gray concurring)

Affirmed in part, reversed in part, rendered in part, reformed in
part, and remanded in part

Opinion delivered and filed April
 20, 2005

[CV06]











[1] Appellant Stephen R. Davis is the principal of Ski River, and Appellant Karen Davis is his wife.





[2] The McCallas also sued for fraud and breach of
warranty of merchantability.Â  





[3] Baker also cross-claimed for breach of contract,
fraud, waste, and declaratory judgment that (1) the right of first refusal in
the Baker-Davis lease is void; and (2) the Baker-Davis lease is void for lack
of consideration.Â  Baker counterclaimed
against the McCallas for tortious interference with use and enjoyment of his
land, a declaratory judgment that (1) the McCallaÂs option is void and unenforceable;
(2) the McCallas refused to exercise their option and specific performance for
the McCallas to sell the boat storage business to Baker; (3) the Glazier lease
is void and unenforceable because McCalla intentionally placed Baker under
duress to induce him to sign the Glazier lease, and attorneyÂs fees under the
Declaratory Judgment Act.Â  The McCallas
and Baker settled their claims prior to the judgment now on appeal.





[4] Ski River and the Davises also counterclaimed
for tortious interference with Baker-Davis relations and lease and a
declaratory judgment that: (1) the McCallas did not exercise their option; (2)
specific performance for the McCallas to sell the boat storage business to
Baker; and (3) the Baker-Davis lease is legal and binding.





[5] We note that even if we were to address the
findings of fraud and undue influence, we would not find the lease and its
amendments void, and at most, we would find the lease voidable based on undue
influence.Â  See Restatement (Second) of
Contracts, Â§ 177 (1981) (ÂUndue influence is unfair persuasion of a
party who is under the domination of the person exercising the persuasion or
who by virtue of the relation between them is justified in assuming that that
person will not act in a manner inconsistent with his welfare;ÂÂ  ÂIf a partyÂs manifestation of assent is
induced by undue influence by the other party, the contract is voidable by the
victim.Â).





[6] Ski River and the DavisesÂ brief states $75,000 in exemplary damages;
however, the answer to jury question 29 is $20,000 in exemplary damages, and
the judgment awarded $20,000.